## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANDY T.L. WILLIAMSON,

     **Plaintiff,**

v.

LEAVENWORTH COUNTY, KANSAS, et al.,

     **Defendants.**

Case No. 21-2558-DDC-RES

## MEMORANDUM AND ORDER

When a plaintiff begins civil process in the federal court, he must see it through to conclusion—even in the face of the inconveniences of discovery.  So when a plaintiff's initial enthusiasm for litigation flags and he no longer meaningfully engages in discovery, the court may dismiss his case with prejudice under Fed. R. Civ. P. 41(b).[1]  Under this rule, the court may dismiss a case when the plaintiff fails to make discovery if, after considering the relevant factors set out in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), it concludes that dismissal alone would satisfy the interests of justice.  Having considered those factors, the court grants defendants' Motion to Dismiss for Failure to Make Discovery (Doc. 40) and dismisses plaintiff's case.  The court explains why, below.

---

[1]      Several Rules permit the court to dismiss a case when a plaintiff fails to make discovery:  Fed. R. Civ. P. 16(f), 37(b)(2)(A), and 41(b).  Although defendants do not identify the precise rule they invoke here, that makes no difference to the court's analysis, because the *Ehrenhaus* factors apply to motions to dismiss under any of those rules, *Gripe v. City of Enid*, 312 F.3d 1184, 1188 (10th Cir. 2002) (concluding that motions under Rule 41(b), 37(b)(2)(A), and 16(f) "should ordinarily be evaluated under the same [*Ehrenhaus*] factors").

## I.    Background

In November 2021, pro se plaintiff Andy Williamson sued Leavenworth County, "Leavenworth County Kansas Sheriff (Police) Department," and police officers Jane and John Doe, I–IV under 42 U.S.C. § 1983.  Doc. 1 at 2–3.  He makes four claims:  (1) violation of his Fourth Amendment rights when police pulled him over without probable cause, (2) violation of his Fourth Amendment rights when police continued to detain him after the traffic stop ended without probable cause, (3) violation of his Fourth Amendment rights when police, without probable cause, blocked him from leaving the scene, and (4) violation of his First and Fourth Amendment rights when police falsely arrested him without probable cause.  Doc. 1 at 4, 6.  For these violations, plaintiff seeks extraordinary relief:  more than $50 million in damages.  *Id.* at 4.  Specifically, he seeks nearly $30,000 in compensatory damages for damage and loss of property, $25 million in compensatory damages for emotional distress, and $25 million in punitive damages.  *Id.*

Defendants later filed an Answer, denying all allegations and asserting a bevy of affirmative defenses (Doc. 16 at 2–8).  Defendants assert (among other defenses) qualified immunity for the officers, immunity from punitive damages for the county, and an absence of an official policy or custom.  *Id.*  Finally, they assert that they never violated plaintiff's Fourth Amendment rights because at all times they acted with probable cause.  *Id.*

With the Complaint and Answer filed, in March 2022 discovery began—at least for defendants.  Defendants attempted to meet and confer with plaintiff, but he failed to respond to their request.  Doc. 25 at 2.  Defendants then made their initial disclosures on March 21, 2022 (Doc. 23), but plaintiff failed to make his own initial disclosures.  Doc. 25 at 3.  And a few days later, Magistrate Judge Rachel E. Schwartz held a scheduling conference, but plaintiff did not

appear.  Doc. 25 at 3.  Plaintiff's failures culminated in Judge Schwartz's issuing an order

requiring plaintiff to show cause why the court should not dismiss his case for failure to

prosecute under Fed. R. Civ. P. 41(b).  Doc. 25.

In late April (and on the day his response to the Show Cause Order was due), plaintiff

responded, explaining his missteps.  He explained that he didn't meet and confer with

defendants' counsel because he never received their mailed request to do so—he had issues with

his mail service at the time.  Doc. 27 at 1.  And he explained that he missed the scheduling

conference because his schedule did not permit him to attend—he needed to attend a hearing in a

different case where he was a defendant.  *Id.* at 2.  He called "this Court's Clerks Office" and left

a voicemail explaining his scheduling conflict.  *Id.* at 2.  He did not explain his failure to make

his initial disclosures.  *See id*.

After plaintiff's explanation, Judge Schwartz decided not to recommend dismissal of the

case.  Doc. 28.  But she warned plaintiff, "any further failure to fully comply with the court's

orders could result in . . . dismissal of the case."  Doc. 28.  Judge Schwartz then ordered plaintiff

to submit his initial disclosures and to meet and confer with defendants, and she set a new

scheduling conference for late May.  Doc. 29.

Following the new scheduling conference, defendants continued their attempts at

discovery, while plaintiff continued rebuffing those attempts.  On June 7, defendants made their

first discovery requests:  a request for production of documents and interrogatories.  Doc. 33.

Plaintiff did not respond to them.  Doc. 40 at 2.  To address plaintiff's unresponsiveness,

defendants emailed him on July 18—12 days after Fed. R. Civ. P. 33(b)(2)'s and 34(b)(2)(A)'s

deadlines—and asked him to provide his responses within seven days.  Doc. 42-2 at 1.  In a July

29th email, plaintiff again declined to produce his discovery responses, explaining that he was

out of the country with a damaged laptop, limiting his ability to respond.  Doc. 41 at 1.  He agreed, however, to provide his responses by August 3rd.  *Id.*  Uninterested in that new timeline, defendants requested a telephone conference with the court to address plaintiff's continuing failure to provide discovery responses; Judge Schwartz set one for the next day.  Doc. 36.  Just before that conference, plaintiff provided his long-awaited responses—but they were "virtually devoid" of substance and mostly comprised of "simple one-word objections."  Doc. 42 at 2.  The telephone conference resulted in the court's ordering that defendants send a letter to plaintiff addressing their issues with his discovery responses and that the two parties meet and confer about the letter and the inadequate discovery responses.  Doc. 38.  The court once again warned plaintiff that failing to comply with the court's deadlines could result in dismissal of his case.  *Id.*

Even after that Order, plaintiff remained uncooperative.  Defendants sent the required letter to plaintiff, and the parties met and conferred about the letter and the inadequacy of the discovery responses.  Doc. 40 at 3; Doc. 41 at 2.  The parties dispute what occurred during that phone call.  Defendants assert that plaintiff committed to "continu[ing] to object to certain requests and . . . provid[ing] substantive responses and documents . . . by August 29."  Doc. 40 at 3.  Plaintiff, for his part, asserts that he never agreed to provide substantive responses and documents, instead asserting that he would "simply answer No to Discovery that did not apply to [him]" and that more than 95% of his objections remained.  Doc. 41 at 2.  Defendants assert that as of September 2, plaintiff still had not provided the promised substantive responses, documents, or grounds for his objections.  Doc. 42 at 3.  They then moved this court to dismiss plaintiff's case for failure to make discovery.  Doc. 40.

## II.     Legal Standard

A court may dismiss a case with prejudice if it concludes, after considering the relevant factors, that dismissal—and dismissal alone—would satisfy the interests of justice. *Ehrenhaus*, 965 F.2d at 918.  Those relevant factors are commonly called the *Ehrenhaus* factors, and courts use them to evaluate motions to dismiss with prejudice, whether under Rule 16(f), 37(b)(2)(A), or 41(b). *Gripe v. City of Enid*, 312 F.3d 1184, 1188 (10th Cir. 2002).  Under the *Ehrenhaus* factors, a court considers (1) the degree of actual prejudice to the defendant, (2) the amount of interference with the judicial process, (3) the culpability of the litigant, (4) whether the court warned the party in advance that dismissal was a likely sanction, and (5) the efficacy of lesser sanctions. *Ehrenhaus*, 965 F.2d at 921.

## III.    Analysis

The first factor considers the actual prejudice that the case has caused the defendant. This prejudice could consist of mounting attorney's fees, *Ehrenhaus*, 965 F.2d at 921, or the reputational harm that comes from remaining a defendant in an ongoing lawsuit, *id*.  But actual prejudice is not as significant when the defendant's advocacy burdens are minimal, or consisting mostly of email or telephone communications. *Neighbors v. Lawrence Police Dep't*, No. 15-CV-4921-DDC-KGS, 2017 WL 396239, at *7 (D. Kan. Jan. 30, 2017).  In this case, defendants have incurred prejudice in the form of needless attorneys' fees and the reputational hit that a pending case brings.  This prejudice is mitigated, however, by the minimal advocacy required of the parties thus far.  Defendants only have engaged in "paper proceedings" (that is, filing a brief answer, short motions, brief discovery requests, and initial disclosures), rather than in-person court appearances.  And they have communicated with plaintiff and the court mostly by phone or email.  This factor therefore favors dismissal, but not overwhelmingly so.

The second factor considers the degree of interference with the judicial process.  This factor has more weight when a party flouts the court's authority by disobeying its orders. *Ehrenhaus*, 965 F.2d at 921.  The factor carries less weight, however, when the noncompliance stems from a good-faith discovery dispute.  *See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1143 (10th Cir. 2007).  But single-word objections and discovery responses virtually devoid of substance are not good-faith discovery disputes.  And plaintiff cannot claim unfamiliarity with the Rules:  defendants have sent him the relevant discovery rules and explained what those rules require of discovery responses.  Finally, plaintiff's decision to proceed pro se, without the know-how of an attorney, should not unduly inconvenience defendants.  This factor favors dismissal.

The third factor assesses the litigant's culpability in the noncompliance.  A party's refusing to appear elevates its culpability, *Ehrenhaus*, 965 F.2d at 921, while noncompliance resulting from a misunderstanding or accidental behavior can diminish it, *see Neighbors*, 2017 WL 396239, at *7.  Even so, a court properly may deem accidental noncompliance willful if it results from a party's repeated failure to participate in the litigation.  *See Lewis v. Carrell*, No. 12-CV-3112-DDC-JPO, 2015 WL 3966715, at *3 (D. Kan. June 30, 2015).  The court has routinely instructed Mr. Williamson to comply with the rules, and defendants have explained to him why his discovery responses are inadequate.  The court therefore views plaintiff's failure to cooperate as willful noncompliance—even though, at one point, it might have stemmed from misunderstanding.  This factor, like the others, favors dismissal.

The fourth factor considers whether plaintiff has received notice of possible dismissal.  A warning that further failure to comply with discovery could result in dismissal is enough.  *Gripe*, 312 F.3d at 1188.  Here, Judge Schwartz unequivocally warned plaintiff—more than once—that

he could face dismissal if he continued to violate the court's orders.  This factor therefore weighs in favor of dismissal.

The fifth factor considers the efficacy of a lesser sanction.  When a party proceeds *in forma pauperis* (IFP), money sanctions can have little effect, *Lewis*, 2015 WL 3966715, at *3, rendering ineffective one possible lesser sanction.  On the other hand, when noncompliance results from a misunderstanding or accidental behavior, the court more appropriately could impose a lesser sanction.  *Neighbors*, 2017 WL 396239, at *7.  As stated before, plaintiff here cannot claim ignorance of the Rules—both the court and defendants have explained what the Rules require of him.  The court moreover has granted plaintiff IFP status and a monetary sanction would have little effect on him.  This factor favors dismissal.

Taken together, all five of the *Ehrenhaus* factors counsel the court to dismiss plaintiff's case.  Defendants have incurred actual prejudice in the form of needless costs and time spent trying to defend the case on its merits.  Plaintiff's noncompliance has interfered with the judicial process, and he bears culpability for that noncompliance.  The court moreover has admonished plaintiff, in clear terms, that he could face dismissal for further noncompliance, and monetary sanctions would likely have little effect on him.  Together, Mr. Williamson's conduct favors dismissal of his case.

## IV.    Conclusion

Because all five *Ehrenhaus* factors favor dismissal with prejudice, the court dismisses plaintiff's lawsuit with prejudice for failure to prosecute under Federal Rule of Civil Procedure 41(b).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss for Failure to Make Discovery (Doc. 40) is granted and this case is dismissed with

prejudice for failure to prosecute under Federal Rule of Civil Procedure 41(b).  The court directs the Clerk to enter a Judgment consistent with this Order and close the case.

**IT IS FURTHER ORDERED THAT** defendants' Renewed Motion to Dismiss for Failure to Make Discovery (Doc. 43) is denied as moot.  In light of the court's ruling on the Motion to Dismiss for Failure to Make Discovery (Doc. 40), this renewed motion is now moot.

**IT IS SO ORDERED.**

**Dated this 21st day of December, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**